**Affirmed and Memorandum Opinion filed June 1, 2023.**



In The

# Fourteenth Court of Appeals

_____

### NO. 14-22-00109-CR

_____

**TYLER GALE WILLBANKS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 2 and Probate Court
Brazoria County, Texas
Trial Court Cause No. 249917**

## MEMORANDUM OPINION

Appellant challenges his misdemeanor conviction for making a terroristic threat against a public servant, arguing in two issues that the evidence is legally insufficient to support the conviction, and that the trial court erred by admitting certain statements following his arrest. For the reasons given below, we overrule both issues and affirm the trial court's judgment.

## BACKGROUND

The facts of this case are largely undisputed.

Appellant created a disturbance one evening, and the disturbance alerted two of his neighbors. One of the neighbors described appellant as shouting and "howling at the moon." The other neighbor said that appellant was loudly and uncharacteristically yelling about the gang MS-13.

Concerned that appellant might be a danger to himself or to others, one of the neighbors dialed 9-1-1 and requested a welfare check. An officer was dispatched to the scene, and the officer wore a body camera that recorded his encounter with appellant.

Video from the body camera showed that the officer parked several houses away from appellant's house. The officer left his engine running with the headlights on. His patrol vehicle was clearly marked as belonging to the local police department.

The officer then approached appellant's house on foot. As the officer neared appellant's front door, the officer noticed a video doorbell camera, as well as a person exhibiting gang signs through the transom window above the door. Unsure of the situation, the officer decided to step away from the house, call for backup, and speak with the neighbors.

As backup was on the way, appellant walked outside his front door and began shouting again, to nobody in particular. The officer described the shouting as "nonsense." Appellant shouted that he was "the king of the world" and that he "reign[ed] supreme." He also shouted to "check your bank account."

At one point, appellant noticed the officer's vehicle down the street, which was the only parked vehicle in the area with its headlights still on. Believing that

someone was inside the vehicle, appellant made the following statements, which escalated in tone:

> Open the door. Open the door. Open the door. Neither one of you? That's what I thought. Bitches. Get the fuck out of here. Y'all ain't even the police. Y'all are fake ass police trying to be going around everybody. You ain't the Five-O. You ain't the po-po. You got nothing on me, bitch. I will kill you. I'll kill a motherfucker over my bitch.

During the course of these statements, appellant remained in his front yard, and the officer was behind him, hiding around the side of appellant's house. When backup arrived, the officer snuck up to appellant, knocked him to the ground, and handcuffed him.

Appellant was charged with making a terroristic threat against a public servant. He pleaded not guilty to that charge, and his case proceeded to a nonjury trial.

The defense argued that appellant should not be convicted because appellant said "a lot of things," and only a few of his statements were concerning. The defense characterized these concerning statements as "hyperbole" and an expression of appellant's right to free speech. The defense finally emphasized that appellant did not have any weapons on his person, and that he did not intend to place the officer in fear of imminent serious bodily injury, considering that the officer was not even in his patrol vehicle.

The trial court rejected these defensive arguments, found appellant guilty, and assessed his punishment at 365 days in jail, but the trial court probated the sentence and placed appellant on community supervision for eighteen months. *See* Tex. Code Crim. Proc. Art. 42A.053.

# SUFFICIENCY OF THE EVIDENCE

In point of error one, appellant contends the evidence was insufficient to support his conviction. In a sufficiency challenge, a reviewing court must determine whether a rational trier of fact could have found the essential elements of an offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Under the offense charged here, the prosecution had the burden of proving the following essential elements: (1) appellant threatened to commit any offense involving violence against the officer; (2) appellant had the intent to place the officer in fear of imminent serious bodily injury; and (3) the officer was a public servant. *See* Tex. Penal Code § 22.07(a)(2), (c)(2).

The evidence was legally sufficient to support each of these elements.

The first element was supported by the officer's body camera video, in which appellant expressly threatened a crime of violence: "I will kill you." Even though the officer was situated behind appellant when this threat was made, a reasonable fact finder could still infer from the surrounding circumstances that appellant made this threat against the officer because the video indicated that appellant had been shouting at the officer's patrol vehicle, and because appellant's other statements suggested a belief that the officer had been inside of the vehicle at the time of the threat.

The second element of intent can also be inferred from the circumstantial evidence. By making an express threat to "kill," a reasonable fact finder could infer that appellant had formed the intent to place the officer in fear of imminent serious bodily injury. *See Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009) ("One's acts are generally reliable circumstantial evidence of one's intent.").

4

And as for the third element, the officer testified that on the night in question, he was employed by the local city's police department. That testimony was sufficient to show that he was a "public servant." *See* Tex. Penal Code § 1.07(41)(A) (defining that term to include "an officer, employee, or agent of government").

Appellant argues in his brief that the evidence is insufficient because the prosecution failed to show that the officer had actually been placed in fear of imminent serious bodily injury. This argument fails for two reasons. First, the officer directly testified he had been placed in fear of imminent serious bodily injury. Second, and more importantly, the prosecution was not required to prove that appellant's threat had any effect on the officer. Rather, the prosecution was required to prove that appellant communicated his threat with the intent to place the officer in fear of imminent serious bodily injury. For the reasons discussed above, there was legally sufficient evidence to support these essential elements.

Appellant relatedly argues that the prosecution failed to show that the violence he threatened was imminent. But again, the prosecution had no such burden. Instead, the prosecution had the burden of showing that appellant's intent was to place the officer in fear of imminent serious bodily injury. Based on appellant's aggressive language and taunting behavior, a reasonable fact finder could have found that appellant possessed that intent beyond a reasonable doubt.

We overrule point of error one.

## HOSPITAL STATEMENTS

During the punishment phase of trial, a second officer testified that he took appellant to the hospital for an evaluation pursuant to an emergency detention order. This officer also testified that appellant volunteered certain statements while he was in the hospital.

5

When the prosecution asked the officer to repeat appellant's specific statements, the defense objected on two separate grounds: first, that the statements were hearsay; and second, that they were given at a time when appellant was in custody and his *Miranda* rights had not been administered. The prosecution responded that the hearsay rule did not apply because the statements were from the defendant. The prosecution also responded that the statements were not the product of a custodial interrogation. Rather, the prosecution asserted that the statements were volunteered by appellant.

The trial court did not give an immediate ruling. Instead, the trial court said, "Let's get back to whether or not they were the result of interrogation. Give me some circumstances."

The officer testified that he and appellant were sitting on opposite sides of a hospital hallway, waiting for appellant to be allowed into a certain room. Appellant was handcuffed for safety reasons, but the officer said that he was not asking appellant any questions, as repeated in the following testimony:

Q. Okay. And while you're at the hospital, were you asking him any questions?

A. No.

Q. Did he volunteer information to you?

A. He made those statements of—do you want me to proceed with them?

Q. Let me—let me ask the question. At that—

A. Okay.

Q. What did he tell you at that point?

A. He told me that I—he had the right to shoot us because we were on his property. He had the right to shoot the police because we were on his property.

Q. How did you interpret that?

6

A.   Very seriously.

The prosecution then passed the witnessed.

On cross-examination, the defense asked the officer if appellant was in custody, or if he was free to leave. The officer responded that he believed appellant had been detained. The trial court also interjected: "I think he was detained. I don't have any problem with him having been detained and been—his freedom of movement having been restrained. I just don't think it's the result of interrogation, so." Later, the trial court made written findings that appellant "was in custody for purposes of his statement made at the hospital," but that the "statement was not the product of custodial interrogation because [appellant's] statement was spontaneous and not in response to any questions from [the officer], and [the officer's] conduct was not reasonably likely to elicit an incriminating response from [appellant]."

Now, in his second point of error, appellant complains of the trial court's ruling to admit the challenged statements, essentially arguing that the trial court should have found that his statements were given during a custodial interrogation and that he should have been warned of his *Miranda* rights, as required by Article 38.22 of the Texas Code of Criminal Procedure.

We review the trial court's ruling for abuse of discretion. *See Ex parte Moore*, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013). Under that standard, we must view the record of the hearing in the light most favorable to the trial court's ruling, and we must sustain that ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.*

Here, the trial court found that appellant did not give his statements during a custodial interrogation. That ruling is plainly supported by the officer's uncontroverted testimony that he did not ask appellant any questions in the hospital,

7

and that appellant volunteered his statements instead. Accordingly, we cannot say that the trial court's ruling amounted to an abuse of discretion.

We overrule point of error two.

## CONCLUSION

The trial court's judgment is affirmed.


/s/    Tracy Christopher
Chief Justice


Panel consists of Chief Justice Christopher and Justices Jewell and Spain.

Do Not Publish — Tex. R. App. P. 47.2(b).