**Affirmed and Majority and Dissenting Opinions filed June 6, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00259-CR

## ROBERT RAY MOORE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1489433**

## D I S S E N T I N G   O P I N I O N

Appellant asserts on appeal that his trial court rendered ineffective assistance by failing to (1) investigate Appellant's intellectual capacity; (2) pursue an examination and hearing with respect to Appellant's competence; (3) ensure Appellant's guilty plea was knowing and voluntary; (4) present mitigating evidence at the punishment hearing; and (5) inform, advise, and prepare Appellant with respect to his testimony at the punishment hearing. Because there is a reasonable probability that, but for the errors committed by trial counsel, the

results of Appellant's proceedings below would have been different, I would sustain Appellant's ineffective-assistance claim and reverse and remand this case to the trial court for further proceedings.

A defendant has a Sixth Amendment right to effective assistance of counsel. U.S. Const. amend. VI; *see also Ex parte Moore*, 395 S.W.3d 152, 157 (Tex. Crim. App. 2013). To establish ineffective assistance of counsel, a defendant must show by a preponderance of the evidence that (1) his trial counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for trial counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 686 (1984); *see also Ex parte Moore*, 395 S.W.3d at 157. A defendant bears the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Ex parte Moore*, 395 S.W.3d at 157.

## I. Trial Counsel's Representation Fell Below an Objective Standard of Reasonableness.

Under the first prong of the *Strickland* standard, a defendant must show that his trial counsel's performance was deficient under prevailing professional norms and according to the necessity of the case. *Strickland*, 466 U.S. at 687-88; *Ex parte Moore*, 395 S.W.3d at 157. The defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

Allegations of ineffective assistance of counsel must be firmly rooted in the record. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Lopez v. State*, 462 S.W.3d 180, 184 (Tex. App.—Houston [1st Dist.] 2015, no pet.). We do not limit our review to a single portion of the representation but examine the totality of the circumstances to determine counsel's effectiveness. *Strickland*, 466 U.S. at

2

688-90; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

For our examination of Appellant's ineffective-assistance claim, we consider the professional norms applicable to different components of a criminal defendant's representation.

A criminal defense attorney must have a firm command of the facts of the case as well as the governing law before he can render reasonably effective assistance to his client — both in and out of the courtroom. *Ex parte Ybarra*, 629 S.W.2d 943, 946 (Tex. Crim. App. 1982). Counsel therefore has a duty to make reasonable investigations. *Strickland*, 466 U.S. at 691. When assessing the reasonableness of an attorney's investigation, we consider the quantum of evidence known by the attorney to determine whether the known evidence would have led a reasonable attorney to investigate further. *Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006).

Evidence of a defendant's intellectual limitations or disabilities may prompt counsel to investigate the defendant's mental health history. *See Ex parte LaHood*, 401 S.W.3d 45, 50-52 (Tex. Crim. App. 2013); *Lampkin v. State*, 470 S.W.3d 876, 912-16 (Tex. App.—Texarkana 2015, pet. ref'd). Understanding a defendant's intellectual disabilities is a prerequisite to effective representation. *See* American Bar Association Criminal Justice Standards for the Defense Function 4-1.2 (4th ed. 2015) ("The primary duties that defense counsel owe to their clients . . . are to serve as their clients' counselor and advocate with courage and devotion; to ensure that constitutional and other legal rights of their clients are protected; and to render effective, high-quality legal representation with integrity."). Evidence of a defendant's mental health history also can be used as mitigating evidence. *See, e.g., Lampkin*, 470 S.W.3d at 910. "It must be a very rare circumstance indeed where a decision not to investigate would be 'reasonable' after counsel has notice

3

of the client's history of mental problems." *Bouchillon v. Collins*, 907 F.2d 589, 597 (5th Cir. 1990).

Trial counsel's representation of Appellant was deficient in three respects: failing to investigate Appellant's intellectual capacity at any time, failing to present mitigating evidence of Appellant's intellectual capacity at the punishment hearing, and failing to inform, advise, and prepare Appellant with respect to his testimony at the punishment hearing.

Turning first to trial counsel's failure to investigate Appellant's mental health history, Appellant's pre-sentence investigation report contained several mentions of Appellant's limited intellectual functioning. The report states that Appellant was assigned to special education classes during school and dropped out of high school after completing tenth grade. Discussing Appellant's mental health history, the report indicates Appellant was diagnosed with ADHD as a child; received social security disability income; and was diagnosed with an axis I mood disorder. The report states that Appellant had a history of sporadic employment; Appellant reported "having problems finding a stable job because he is illiterate."

Despite these indications regarding Appellant's intellectual limitations, trial counsel failed to further investigate Appellant's mental health history — counsel's only additional investigation into Appellant's mental health consisted of asking Appellant's family for Appellant's high school medical records (which the family was unable to procure). *See also Wiggins v. Smith*, 539 U.S. 510, 523-29 (2003) (attorneys' decision against expanding their investigation into defendant's mental history beyond the pre-sentence investigation report fell short of prevailing professional standards). But further investigation would have shown that Appellant had significant intellectual limitations: Dr. Hamlin's psychological examination of Appellant stated that Appellant had an IQ score of 61, which

placed Appellant "in the extremely low range of intellectual functioning." Dr. Hamlin also noted that Appellant had limited verbal abilities that "would necessitate assistance with any written materials, simplified explanations, and frequent checks for clarity." Appellant's testimony at the punishment hearing — sometimes contradictory and often confusing — further evidences his intellectual challenges.

At the hearing on Appellant's motion for new trial, Appellant's trial counsel acknowledged that he "kind of dropped the ball with respect to [his] assessment of [Appellant's] intellectual ability as far as [Appellant's] understanding of reading, writing, and just the basic language." Trial counsel said he was unaware Appellant could not read or write until Appellant took the stand at his punishment hearing. Trial counsel's failure to investigate Appellant's mental health history fell below objective standards of reasonableness.

Moreover, trial counsel testified that he "did not communicate with [Appellant] like he should have" and did not know "the violation of [the] protective order would be an issue at all." Trial counsel did not prepare Appellant to testify with respect to the no-contact order but, at the punishment hearing, questioned Appellant at length with respect to his understanding of the no-contact order and any violations thereof. Trial counsel's failure to prepare Appellant for this line of questioning — especially in light of Appellant's intellectual limitations — fell below prevailing professional norms.

Examining the totality of the trial counsel's representation and counsel's testimony at the new trial motion hearing supports the conclusion that trial counsel's representation fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88.

**II.** **There is a Reasonable Probability That, But for Trial Counsel's Deficient Performance, the Outcome of the Proceedings Would Have Been Different.**

Under the second prong of the *Strickland* standard, a defendant must show that he was prejudiced by his attorney's performance or that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

In many cases involving claims for ineffective assistance of counsel, defendants often will assert that attorney error was made during the course of the proceedings (*e.g.,* counsel failed to make a timely objection on the record or preserve a ruling for the appellate court to review). In such cases, a defendant who argues this claim can show prejudice only by showing "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Roe v. Flores-Ortega*, 528 U.S. 470, 482 (2000) (quoting *Strickland*, 466 U.S. at 694).

However, in other cases, like the one presented to us herein, counsel's "deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself." *Id*. at 483. The standard is not whether, if the defendant had chosen to go to trial, the result would have been different, but rather that the choice to go to trial is a substantially different result than a plea bargain. While courts of appeals may ordinarily "apply a strong presumption of reliability to judicial proceedings," we also cannot apply any such presumption "to judicial proceedings that never took place." *Lee v. U.S.*, 137 S.Ct. 1958, 1965 (2017) (citing *id*. at 482-83) (internal quotation omitted).

In the present case, Appellant submitted testimony that he trusted his lawyer, his lawyer told him to plead guilty, his lawyer told him he would get probation,

and "now I wish I did not plead guilty." As in *Lee*, we must consider whether Appellant was prejudiced by the "denial of the entire judicial proceeding . . . to which he had a right." *Id.* (citing *Flores-Ortega*, 528 U.S. at 483). The only other option for Appellant would have been to go to trial on the facts presented, and that is Appellant's choice to make.

There is a reasonable probability that, but for trial counsel's ineffective assistance as outlined above, Appellant would have gone to trial. Thus, because the results of Appellant's proceedings would have been different *(i.e.,* he would have gotten a trial instead of a plea bargain), I would sustain Appellant's ineffective-assistance claim and reverse for a new trial.


/s/ Meagan Hassan
Justice


Panel consists of Chief Justice Frost and Justices Zimmerer and Hassan (Hassan, J., dissenting).

Publish — TEX. R. APP. P. 47.2(b).

7